May it please the Court, my name is Russell Kenner and I'm representing the Attorney General. The Court should deny Elias' petition for review. She has been represented by ABLE Counsel throughout this process and the Asylum Officer, the Immigration Judge, and the Board have fully Excuse me, counsel, I've got a question here. Sure. It used to be that the Ninth Circuit said you can't require corroboration and then Congress said in the Real ID Act the Ninth Circuit is wrong and they changed the law to make it clear that where corroboration might reasonably be available it can be required and credibility rejected if it wasn't there. However, I'm not sure whether that statutory change applies here because of the retroactivity problem. Could you advise us? Yes. The change in the statute doesn't apply because her application was made before May 2005. But I differ in degree with Your Honor's statement about the Ninth Circuit law. In our brief on page 31, we indicate what we believe to be the case law, which is that when there is a legitimate reason given for lack of credibility then the Immigration Judge can require corroboration. And the other point that I would make is I thought we phrased it a little differently, that he could not require it, but he could consider it in evaluating credibility, something like that. Is that right? Yes. The other point that I would make is that there was a footnote dropped recently in a very recent case that we brought up in our supplement. And that Carpadian, it's in our supplemental brief that we submitted, I believe, about 10 days or so ago. And that characterized it as limited circumstances where you could look to the record for that the Immigration Judge could rely upon lack of corroboration as further damaging the credibility of the applicant. And here there were legitimate reasons for the Immigration Judge denying her credibility without addressing the corroboration, which was that there's nothing in the news articles or in the State Department's country condition reports that indicate that a public opponent of female genital mutilation was threatened or attacked in those reports. The other point is her claim is that the attack was made by the Mungiki. The Mungiki were outlawed in Kenya. Do we need the credibility determination to stand in order to affirm, or is it enough to compel affirmance that the government is neither unwilling nor unable to deal with the Mungiki? On the – with regard to the credibility standing, yes, we would have to point to substantial inconsistencies in the record and implausibilities. What I mean is, can we lose our credibility, win on the government's effectiveness in dealing with the Mungiki and win your case, or do you have to win on both issues? No, we only have to win – we would only have to win on the government as able to, or at least willing, as able to control the Mungiki. And then also there's the question of relocation, which we brought up in our supplemental brief, that it was not addressed in the appellant's brief, and for that reason they waived the relocation issue. So from the government's perspective, the petitioner does not raise a substantial evidence argument as far as the government's willingness to control the Mungiki, right? Correct. And the substantial evidence is that they are able to control the Mungiki. They were outlawed – if you look at the administrative record at 223 and 146, they've been outlawed since July of 2003. Now, that's after the – after the miscellaneous left Kenya, but certainly before the hearing, and that evidence is in the record. But there was also a substantial crackdown on the Mungiki in February of 2003, where there was a number of arrests made, and the Mungiki are viewed as a threat to the district government, and the district government was very strong in its response to that sect. It looks like the BIA – the IJ went on credibility, and the BIA does not at least expressly go on credibility. It just goes on, respondent has not demonstrated that the Kenyan authorities are unwilling or unable to protect against members of the Mungiki sect. Does that mean that the BIA chose not to rely on the credibility determination? My recollection, and I'll have to – It's page 2 of the administrative record. The very first sentence says, we find no clear error in the immigration judge's past prosecution. If she were believed, she would have established past persecution in the sense that an attack with the intention to forcibly circumcise would be past prosecution, but her story wasn't plausible. Her story was that this was five elderly women in a public place, as opposed to the news articles referring to the Mungiki talk about abductions by men and women, young girls 15 to 19, and clearly they're intending to do what they do in secret, as opposed to next to a public road in the early evening. Counsel, just following up on what Judge Kleinfeld said, I guess that from the government's perspective, you agree that the petitioner has really two parts to the burden. One is her own story, and that's where the corroborative evidence issue comes in, and the second has to do with her saying that the government's either behind this or not doing anything to suppress it. And the evidence suggests, I gather, that she did not meet her burden to show that the government is not interested. Indeed, the government apparently is doing what it can to fight this group. The fact that she didn't report to the police, she didn't indicate why that was the case. She thought it was going to be useless, but there was nothing to back up her claim. Is that correct? That's correct. And in addition, Your Honor, someone who is a public advocate, who claims they've been attacked because they're a public advocate against female genital mutilation, in reasonable circumstances is so aligned with the authorities that it's hard to believe that in these circumstances, where you have a crackdown on the mungiki just a month before the alleged assault, you have 20 years of opposition to the practice plus the outlawing of the practice in 2001, that the authorities would not be responsible to a person who had those credentials. And I think that's why, also why, corroboration seems so readily available, that if someone is a public speaker, a public health advocate, against things that the government opposes, that that person would have a network of government coworkers, coworkers at her hospital, coworkers among the NGOs, that would come forward with letters of support and it would be reported in the newspapers and in the country condition report. What role, if any, does the fact that she apparently is estranged from her husband, they've been apart for years, and it was his family, supposedly, the women in his family that made this attempt on her? Well, I think that that strengthens her inability to communicate with her husband over the period of time between March 2003, coming to the country in January of 2004, shows the people can relocate and not be found. Now, the petitioner has turned that in, that he's in hiding. But if he's in hiding, then so are the other people who didn't support her. Her parents, her siblings, her neighbors, her friends, her coworkers, coworkers at NGOs, colleagues in the government. It's just her burden. And I would point out one other thing about corroborative evidence in this particular case, rather than generally. In the notice to respondent, there is a conduct of hearing section that says that you can bring forward additional evidence besides simply your testimony. Here we have an English-speaking, educated nurse. The hearings were conducted in English. She did bring to the table her nursing certificate, graduation pictures, and the government brought forward articles. The immigration judge indicated that he would have liked to have seen articles and her husband's support. So she was represented by Abel Counsel. If there had been an opportunity to bring forward that, Abel Counsel would have said, gee, we should just, we need another 30 days, which is done routinely. I thought she was on the outs with her husband. No, there was no indication of that at the time. They were talking on the phone after the assault, according to Ms. Elias, and he was the one who indicated that it was the mother-in-law who was the instigator. I get it. Your time is up. Yes, it is, Your Honor. Thank you. Let me ask you, did opposing counsel call you and tell you his problem? I was traveling yesterday, so Did he get a message on your cell phone or something? How do we know he's sick? How do we know anything? I imagine that if Your Honor gives him the opportunity to put something in the record, I'm sure he will. Oh, sure, he'll have this opportunity. I just want to know what we know now. The clerk came in and told us that the lawyer for the petitioner was sick, and I don't know where that comes from. I don't think she talked to him. I know only what the clerk told me. Oh, okay. Thank you, Your Honor. Thank you, counsel. Elias v. Holder is submitted.
judges: Nelson T. G., Kleinfeld, Smith M.